```
UNITED STATES DISTRICT COURT              ORIGINAL
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :
                                        SEALED INDICTMENT
         - v. -                     :
                                        14 Cr. ___
MARVIN JEMAL,                       :

                    Defendant.      :        14 17

- - - - - - - - - - - - - - - - - - x
```

COUNT ONE
(Conspiracy to Commit Bank Fraud)

The Grand Jury charges:

Relevant Persons and Entities

1. At all times relevant to this Indictment, Bank-1 was a full service commercial bank chartered by the State of New York and a member of the Federal Deposit Insurance Corporation. Bank-1's headquarters were located in Manhattan, New York.

2. MARVIN JEMAL, the defendant, founded a company based in Manhattan, New York that operated as a designer, importer and distributor of luggage, business bags, backpacks and accessories (the "Company"). At all times relevant to this Indictment, JEMAL was the Chief Executive Officer, or CEO, of the Company.

3. At various times relevant to this Indictment, the Company generated annual revenues of more than $10 million and employed approximately 20 individuals. MARVIN JEMAL, the defendant, was the highest compensated employee of the Company.

JUDGE CAPRONI

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: FEB 19 2014

## THE SCHEME TO DEFRAUD

### Overview

4.   From at least in or about 2007, up to and including at least in or about October 2009, MARVIN JEMAL, the defendant, engaged in a scheme to fraudulently induce Bank-1 to lend millions of dollars to the Company.  Among other things, in order to induce Bank-1 to lend money to the Company, JEMAL and his co-conspirators knowingly made false representations to Bank-1, concealed material facts from Bank-1, and submitted false and fraudulent documents to Bank-1, including fabricated invoices and shipping documents.  In total, the Company obtained nearly $7 million in loans from Bank-1 and defaulted on approximately $6 million of those loans.

5.   Although the Company obtained the loans from Bank-1 for the purported benefit of the Company's business, MARVIN JEMAL, the defendant, caused approximately $3.5 million of the loan proceeds to be transferred to personal bank accounts under his control and then used those proceeds to pay for various personal expenses, including mortgage payments on properties he owned, credit card bills, and car payments.

### The Factoring Agreement

6.   The Company obtained the loans from Bank-1 as part of a secured credit facility, pursuant to a factoring agreement that the Company and Bank-1 had entered into on or about May 15, 2007 (the "Factoring Agreement").  In connection with the

Factoring Agreement, Bank-1 initially approved a $3 million secured credit facility for the Company. Pursuant to the terms of the Factoring Agreement, the Company would, among other things, assign and sell to Bank-1 all of the Company's interest in its accounts receivable. In exchange, Bank-1 would advance to the Company up to eight-five percent (85%) of the total value of those receivables.

7. The Factoring Agreement required that the Company, in order to draw down on its secured credit facility, provide Bank-1 with an accurate listing of all accounts receivable, as well as supporting documentation, including copies of (i) relevant underlying invoices and (ii) shipping documents or other proof of delivery.

8. On or about August 18, 2008, MARVIN JEMAL, the defendant, requested that the Company's secured credit facility be increased from $3 million to $7 million. At or about the same time, the lending formula pursuant to the Factoring Agreement was modified. Specifically, while the Company was still entitled to borrow from Bank-1 an amount equal to eighty-five percent (85%) of the total value of its accounts receivable, the modified Factoring Agreement also entitled the Company to borrow from Bank-1 an additional amount equal to fifty percent (50%) of the Company's eligible inventory. Bank-1 approved the increase to the Company's secured credit facility on or about September 8, 2008.

## The Scheme to Fraudulently Induce Bank-1 to Loan Money to the Company

9.      In order to fraudulently induce Bank-1 to advance funds to the Company pursuant to the Factoring Agreement, MARVIN JEMAL, the defendant, caused duplicate and/or fabricated invoices to be transmitted to Bank-1 that purported to reflect the sale of certain products by the Company and, thus, an outstanding receivable for the Company.  In truth and in fact, however, as JEMAL well knew, the sales reflected on those invoices were false, as those sales either had never occurred or had already been invoiced separately.

10.     As a further part of the scheme to defraud, in order to fraudulently induce Bank-1 to advance funds to the Company pursuant to the Factoring Agreement, MARVIN JEMAL, the defendant, caused fraudulent shipping documents to be provided to Bank-1.  Those shipping documents purported to substantiate the sales of products by reflecting that those products had been shipped to customers.  In truth and in fact, however, as JEMAL well knew, those shipping documents were false and fraudulent, as the products had not, in fact, been shipped to the customers as reflected in the shipping documents.

11.     As a further part of the scheme to defraud, in order to fraudulently induce Bank-1 to advance additional funds to the Company, MARVIN JEMAL, the defendant, caused certain facts to be concealed from Bank-1, knowing that those facts were relevant to

Bank-1's determination of the amount of funds to lend to the Company. Those facts included, among other things, credits that the Company had provided to certain of its customers (which thereby reduced the total accounts receivable associated with those customers) and instances in which the Company had directly collected and deposited payments from its customers on the same invoices the Company assigned to Bank-1.

12.  As a further part of the scheme to defraud, MARVIN JEMAL, the defendant, caused the Company to provide inaccurate monthly inventory spreadsheets to Bank-1 which overstated the Company's existing inventory. JEMAL did so in order to fraudulently obtain additional funds from Bank-1, as the terms of the Factoring Agreement enabled the Company to obtain from Bank-1 additional funds in an amount equal to fifty percent (50%) of its existing inventory.

13.  Between in or about April 2009 and in and about October 2009, in order to conceal the scheme to defraud, MARVIN JEMAL, the defendant, made various oral misrepresentations to certain representatives of Bank-1 when those representatives confronted him about irregularities and other issues that Bank-1 had discovered with respect to the Company's assignment of its accounts receivable.

14.  In the course of executing the scheme to defraud, MARVIN JEMAL, the defendant, caused the Company to draw down approximately $6.9 million of its $7 million secured credit

5

facility with Bank-1. Thereafter, by on or about July 12, 2011, the Company defaulted on the loan with Bank-1 in the approximate amount of $6 million.

## Statutory Allegations

15. From at least in or about 2007, up to and including in or about October 2009, in the Southern District of New York and elsewhere, MARVIN JEMAL, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit bank fraud in violation of Title 18, United States Code, Section 1344.

16. It was a part and an object of the conspiracy that MARVIN JEMAL, the defendant, and others known and unknown, willfully and knowingly would and did execute and attempt to execute a scheme and artifice to defraud financial institutions, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institutions, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

## Overt Acts

17. In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others,

were committed in the Southern District of New York, and elsewhere:

    a. On or about June 9, 2009, in New York, New York, MARVIN JEMAL, the defendant, requested that Bank-1 increase the Company's secured credit facility from $7 million to $10 million.

    b. In or about July 2009, MARVIN JEMAL, the defendant, caused a co-conspirator not named herein ("CC-1") to provide fraudulent invoices to Bank-1 in order to draw down upon the Company's secured credit facility at that financial institution.

(Title 18, United States Code, Section 1349.)

### COUNT TWO
### (Bank Fraud)

The Grand Jury further charges:

18. The allegations contained in paragraphs 1 through 14 above are hereby repeated, re-alleged, and incorporated by reference as if fully set forth herein.

19. From at least in or about 2007, up to and including in or about October 2009, in the Southern District of New York and elsewhere, MARVIN JEMAL, the defendant, willfully and knowingly, did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other

property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, JEMAL engaged in a scheme to fraudulently induce Bank-1 to loan money to the Company pursuant to the Factoring Agreement.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT THREE
(False Statements to Influence Bank Action)

The Grand Jury further charges:

20.  The allegations contained in paragraphs 1 through 14 above are hereby repeated, re-alleged, and incorporated by reference as if fully set forth herein.

21.  From in or about 2007, up to and including in or about October 2009, in the Southern District of New York and elsewhere, MARVIN JEMAL, the defendant, knowingly made a false statement and report for the purpose of influencing the action of an institution, the accounts of which were insured by the Federal Deposit Insurance Corporation, upon an application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, loan, and insurance agreement and application for insurance and a guarantee, and a change and extension of the same, by renewal, deferment of action and otherwise, and the acceptance, release, and substitution of security therefore, to wit, JEMAL caused fraudulent documents, including but not limited to fabricated invoices, to be

transmitted to Bank-1, in order to cause that financial institution to permit the Company to draw down upon its secured credit facility.

(Title 18, United States Code, Sections 1014 and 2.)

## COUNT FOUR
### (Money Laundering)

The Grand Jury further charges:

22.   The allegations contained in paragraphs 1 through 14 above are hereby repeated, re-alleged, and incorporated by reference as if fully set forth herein.

23.   After fraudulently inducing Bank-1 to release funds to the Company from its secured credit facility, between in or about May 2007 and in or about February 2012, MARVIN JEMAL, the defendant, moved, or caused to be moved, more than $3.5 million in funds that the Company had obtained from Bank-1 for the purported benefit of the Company's business into personal bank accounts belonging, in whole or in substantial part, to JEMAL. Rather than transfer the money directly from the Company's bank accounts to his personal bank accounts, however, JEMAL first moved, or caused the money to be moved, through bank accounts in the name of two shell corporations JEMAL controlled.

24.   Between in or about May 2007 and in or about February 2012, after he had successfully moved more than $3.5 million in funds from one or more of the Company's bank accounts into his personal bank accounts, MARVIN JEMAL, the defendant, used those

9

funds to pay for various personal expenses, including, among other things, mortgage payments on properties owned by JEMAL, bills from credit cards in the name of JEMAL and his wife, and payments on a Porsche driven by JEMAL.

25. From at least in or about May 2007, up to and including in or about February 2012, in the Southern District of New York and elsewhere, MARVIN JEMAL, the defendant, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, willfully and knowingly conducted and attempted to conduct a financial transaction, involving and affecting interstate commerce, which in fact involved the proceeds of specified unlawful activity, to wit, bank fraud, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, to wit, JEMAL moved, or caused to be moved, more than $3.5 million he had obtained fraudulently from Bank-1 through bank accounts in the names of at least two shell corporations JEMAL controlled and into JEMAL's personal bank accounts to pay various personal expenses.

(Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.)

FORFEITURE ALLEGATION AS TO COUNTS ONE, TWO, AND THREE

26. As the result of committing the offenses alleged in Counts One, Two, and Three of this Indictment, MARVIN JEMAL, the

defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the charged offenses, including but not limited to a sum of money representing the amount of proceeds obtained as a result of the offenses charged in Counts One, Two, and Three of this Indictment.

### FORFEITURE ALLEGATION AS TO COUNT FOUR

27.  As a result of committing the money laundering offense charged in Count Four of this Indictment, MARVIN JEMAL, the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1) any property, real and personal, involved in such offense, and any property traceable to such property, including but not limited to a sum in United States currency that in aggregate is property which was involved in the money laundering offense charged in Count Four of the Indictment or is traceable to such property.

### Substitute Asset Provision

28.  If any of the above-described forfeitable property, as a result of any act or omission of MARVIN JEMAL, the defendant:

   a.   cannot be located upon the exercise of due diligence;

   b.   has been transferred or sold to, or deposited with, a third person;

11

        c.    has been placed beyond the jurisdiction of the Court;

        d.    has been substantially diminished in value; or

        e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982 and Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of MARVIN JEMAL, the defendant, up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 982 and 1956; and Title 21, United States Code, Section 853(p).)

_____  
FOREPERSON

_____  
PREET BHARARA  
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

MARVIN JEMAL,

Defendant.

**SEALED INDICTMENT**

14 Cr. \_\_\_

(18 U.S.C. §§ 1349, 1344 and 2, 1014 and 2, and 1956(a)(1)(B)(i) and 2.)

PREET BHARARA
United States Attorney.

A TRUE BILL

Foreperson.

2/19/14 Filed Sealed Indictment
ac  a/w issued   Judge Fox
              USMJ